UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| CONNIE AGUILAR, as Personal Representative of the Estate of MICHAEL VIRGIL, | § § § § | |
| Plaintiff, | § § § | |
| | § | NO. 1:25-cv-25704 |
| vs. | § § | |
| ROYAL CARIBBEAN CRUISES LTD., A LIBERIAN CORPORATION, | § § | |
| Defendants. | | |

## ORIGINAL COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, CONNIE AGUILAR ("AGUILAR") as Personal Representative of the ESTATE OF MICHAEL VIRGIL (Michael Virgil is hereinafter referred to as "DECEDENT"), by and through undersigned counsel respectfully files this Original Complaint against Defendant ROYAL CARIBBEAN CRUISES LTD., A LIBERIAN CORPORATION ("ROYAL CARIBBEAN") and will show the Court as follows:

### INTRODUCTION

1. This is a maritime wrongful death action brought against ROYAL CARIBBEAN for the HOMICIDAL death of DECEDENT, MICHAEL VIRGIL, while he was a paying passenger aboard the *Navigator of the Seas* ship. In a matter of hours, ROYAL CARIBBEAN crew members significantly over-served DECEDENT alcoholic beverages while aboard the ship. When DECEDENT became intoxicated and agitated, ROYAL CARIBBEAN crew members, including but not limited to security personnel, tackled DECEDENT to the ground, stood on DECEDENT'S

body with their full body weight, and compressed DECEDENT'S body, causing DECEDENT to stop moving. ROYAL CARIBBEAN crew members, at the request of the Staff Captain, administered an injection of sedative medication Haloperidol to DECEDENT and used multiple cans of pepper spray on DECEDENT. DECEDENT ultimately died in the care of ROYAL CARIBBEAN staff and crew members. DECEDENT'S death was ruled a "**HOMICIDE**" as the use of force by ROYAL CARIBBEAN crew members, as well as overservice of alcoholic beverages leading to intoxication, directly contributed to and caused the physiologic conditions leading to DECEDENT'S death. DECEDENT'S death was directly and proximately caused by ROYAL CARIBBEAN'S negligence.

2.  DECEDENT leaves behind a minor autistic son, fiancée, and other family and friends. He was a hard-working individual.

## PARTIES

3.  Plaintiff, CONNIE AGUILAR, as duly appointed Personal Representative of the ESTATE OF MICHAEL VIRGIL, is an individual and citizen of California.[1] She is the biological mother of M.V., Jr., DECEDENT's biological son. She was also, at the time of his death, DECEDENT'S fiancée. She may be reached through her attorneys at Kherkher Garcia, LLP and The Russo Trial Lawyers.

4.  Plaintiff, CONNIE AGUILAR, as the Personal Representative of the ESTATE OF MICHAEL VIRGIL, brings this action on behalf of the Estate and on behalf of all entitled survivors including, but not limited to M.V., Jr., born in 2017.

5.  Defendant, ROYAL CARIBBEAN CRUISES LTD., A LIBERIAN CORPORATION, is a foreign corporation with its principal place of business at 1050 Caribbean

---

[1] Attached hereto as Exhibit 1 is a copy of the decree granting letters of administration, as well as a copy of the letters of administration, issued on November 24, 2025, by the Superior Court of California, County of Riverside.

Way, Miami, Miami-Dade County, Florida 33132, and therefore is a citizen of the State of Florida for jurisdictional purposes. ROYAL CARIBBEAN can be served with process through its registered agent, CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324, or wherever it may be found.

6. ROYAL CARIBBEAN owned, operated, managed, maintained, and/or controlled the *Navigator of the Seas*, including the captain, officers, crew, and security and medical personnel, equipment, and facilities on board.

7. ROYAL CARIBBEAN's crew members onboard the *Navigator of the Seas,* including the staff that over-served alcohol to DECEDENT, the personnel who stood on and compressed DECEDENT'S body with their full bodyweight, and the medical personnel who administered medical care to DECEDENT, were in regular full-time employment of ROYAL CARIBBEAN and/or the ship, as salaried crewmembers. They were also subject to the control of ROYAL CARIBBEAN'S shore-side operations located in Miami, Florida.

8. ROYAL CARIBBEAN's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and ROYAL CARIBBEAN had the right to hire and fire its crewmembers, employees, and/or agents.

9. ROYAL CARIBBEAN is directly responsible and liable for its actions and the actions of its crewmembers, employees, and/or agents.

10. ROYAL CARIBBEAN's crewmembers were employees and agents of ROYAL CARIBBEAN and acted within the course and scope of their employment and/or agency agreement and/or relationship.

11. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## JURISDICTION & VENUE

12. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a). Plaintiff is a citizen of California. Defendant is a citizen of Florida. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as certain causes of action asserted in this Complaint arise under the Death on the High Seas Act (DOHSA), 46 U.S.C. §§ 761-768.

14. ROYAL CARIBBEAN, at all times relevant hereto, personally or through an agent, operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county; was engaged in substantial activity within this state; operated vessels in the waters of this State; and/or the cruise line ticket for the Plaintiff and Decedent requires that suit be brought in this Court against all the named Defendants in this action.

15. Defendant ROYAL CARIBBEAN operates the vessel *Navigator of the Seas* in navigable waters, on the high seas, between ports in the United States and ports in foreign countries. Defendant ROYAL CARIBBEAN is in the business of providing to the public and to PLAINTIFF, DECEDENT, and M.V., Jr., a minor, for compensation, vacation cruises aboard its vessel, *Navigator of the Seas*.

16. The amount in controversy exceeds $75,000, exclusive of attorney's fees, costs, and interest. The actual value of this claim far exceeds the jurisdictional limits of this Court.

17. Venue is proper in the United States District Court, Southern District of Florida, Miami Division pursuant to the forum selection clause in the passenger contract ticket issued by ROYAL CARIBBEAN.

## FACTUAL ALLEGATIONS

18.  At all times material hereto, ROYAL CARIBBEAN owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Navigator of the Seas*.

19.  On December 13, 2024, DECEDENT, AGUILAR, their biological son M.V. Jr., and other family members were fare paying passengers on the *Navigator of the Seas* cruise ship traveling from Los Angeles, California to Ensenada, Mexico and back. Upon information and belief, the *Navigator of the Seas* was in navigable waters at the time of the incident.

20.  As part of the cruise experience, DECEDENT participated in ROYAL CARIBBEAN's all-inclusive drink package, which included alcoholic drinks.

21.  On or about December 13, 2024, between approximately 10:30 A.M. and the time of his death, ROYAL CARIBBEAN crew members negligently served DECEDENT at least 33 (thirty-three) alcoholic beverages. As a result, DECEDENT exhibited obvious visual signs of intoxication, while in plain view of the crew members serving him these alcoholic beverages. DECEDENT was visibly intoxicated such that each of ROYAL CARIBBEAN's crewmembers should not have continued to serve alcohol to him while he was exhibiting these visible signs of intoxication, and each of these crewmembers were negligent for continuing to serve DECEDENT alcoholic beverages in his intoxicated state. ROYAL CARIBBEAN crew members negligently served alcoholic beverages to DECEDENT in excess, causing his judgment and faculties to become substantially impaired.

22.  At all relevant times hereto, ROYAL CARIBBEAN had the right to refuse the continued service of alcohol to any patron visibly intoxicated. Despite reserving the aforesaid rights to itself, ROYAL CARIBBEAN failed to exercise it to protect the life of the DECEDENT.

23. In his intoxicated state, DECEDENT tried to find his cabin room and, in the process, got lost. DECEDENT became agitated. ROYAL CARIBBEAN crew members, including security personnel, approached DECEDENT in an attempt to subdue him. ROYAL CARIBBEAN crew members, including security personnel, then tackled DECEDENT to the ground, stood on DECEDENT'S body with their full weight, and compressed DECEDENT'S body, causing DECEDENT to stop moving. The DECEDENT was subjected to prolonged prone restraint with multiple ROYAL CARIBBEAN crewmembers applying compressive force to DECEDENT'S back and torso, impairing chest expansion, limiting diaphragmatic motion, and obstructing venous return, leading to impaired breathing and hypoxia.

24. ROYAL CARIBBEAN crew members, at the request of the Staff Captain, also administered an injection of sedative medication Haloperidol to DECEDENT and used multiple cans of pepper spray on DECEDENT.

25. The compression of DECEDENT'S body by ROYAL CARIBBEAN crew members, including security personnel, directly caused significant hypoxia and impaired ventilation, respiratory failure, cardiovascular instability, and ultimately cardiopulmonary arrest leading to DECEDENT'S death.

26. DECEDENT'S death was ruled a "**HOMICIDE**" as the use of force by ROYAL CARIBBEAN crew members, as well as overservice of alcoholic beverages leading to intoxication, directly contributed to and caused the physiologic conditions leading to DECEDENT'S death.

27. DECEDENT's incident and death was directly caused by his intoxicated state and by ROYAL CARIBBEAN'S crewmembers' over-serving alcohol when they knew or should have known that DECEDENT was in an intoxicated state. DECEDENT'S ability to appreciate his

surroundings, to move around in a safe and stable fashion, and to understand and appreciate what he was doing were severely diminished due to his intoxicated state, which ROYAL CARIBBEAN'S crewmembers knew or should have known for the reasons previously disclosed. As described above, DECEDENT'S intoxicated state was caused by the overservice of alcohol by CARIBBEAN'S crew members.

28. The cruise continued its multiple day journey to Ensenada, Mexico following DECEDENT'S death on the evening of December 13, 2024. DECEDENT'S body was refrigerated on board the *Navigator of the Seas* until the ship returned to port in Los Angeles, California, on December 16, 2024.

## COUNT I
### VICARIOUS LIABILITY AGAINST ROYAL CARIBBEAN

**Over Service of Alcohol**

29. PLAINTIFF incorporates all other paragraphs by reference here fully.

30. ROYAL CARIBBEAN'S crew members owed a duty to exercise reasonable care under the circumstances for the safety of ROYAL CARIBBEAN's passengers aboard the *Navigator of the Seas*.

31. This duty included, but was not limited to, the responsibility of a marine carrier under applicable U.S. maritime common law to supervise and/or assist passengers aboard the vessel who ROYAL CARIBBEAN knew, or should have known, were engaging, or were likely to engage, in behavior potentially dangerous to themselves or others aboard the vessel.

32. ROYAL CARIBBEAN knew, or should have known, that the risk and actual occurrences of incidents, including deaths, were magnified and/or influenced by factors such as: (a) the design and installation of the subject areas and the vicinity, (b) the unfamiliarity of passengers with its cruise ships, (c) passengers' lack of knowledge of the prior severe incidents

and/or injuries which ROYAL CARIBBEAN knew to be associated with the presence and consumption of alcohol aboard vessels, (d) the effect of alcohol on passengers' judgment, and (e) the general party atmosphere fostered aboard the vessel by ROYAL CARIBBEAN, which deliberately markets "all you can drink" beverage packages.

33. ROYAL CARIBBEAN deliberately makes alcohol available to passengers and crew aboard its vessels, despite knowing that alcohol is banned for safety reasons aboard vessels operated by the U.S. Government and military and aboard U.S. flagged merchant ships.

34. Upon information and belief, the sale of alcohol represents one of the top sources of on-board revenue to ROYAL CARIBBEAN, grossing over millions per year.

35. To maximize this revenue, ROYAL CARIBBEAN deliberately designs its vessels, including the *Navigator of the Seas,* to ensure that there are alcohol serving stations in every nook and cranny of the ship.

36. Neither ROYAL CARIBBEAN nor the law of the relevant flag nation(s) impose a "legal limit" or any other legal consequences for alcohol consumption or intoxication aboard ROYAL CARIBBEAN's ships. Nor does ROYAL CARIBBEAN employ any systematic method to keep track of how much alcohol a particular passenger has consumed over time, other than perhaps looking for visual signs of intoxication, which of course means that the individual is already drunk.

37. ROYAL CARIBBEAN does as much as possible to encourage and facilitate alcohol consumption aboard its vessels.

38. ROYAL CARIBBEAN fully understands and expects that alcohol over-consumption by passengers will result in the diminution of their inhibitions, motor skills, and good judgment, which ROYAL CARIBBEAN, upon information and belief, expects will foster the

general party atmosphere that ROYAL CARIBBEAN desires, and promotes aboard its vessels, and which in turn enhances other revenue producing shipboard activities such as gambling and the purchase of more alcohol.

39. ROYAL CARIBBEAN thus knew that the presence of intoxicated passengers aboard its vessels, including in the subject areas and the vicinity, was common.

40. As a result of ROYAL CARIBBEAN's knowledge as described above, ROYAL CARIBBEAN knew or should have known of the risk of the subject incident, which was foreseeable.

41. ROYAL CARIBBEAN's above-described knowledge and information was not possessed by DECEDENT at all relevant times hereto.

42. ROYAL CARIBBEAN sold its all-inclusive, unlimited "Deluxe Beverage Package" to DECEDENT, which in-and-of itself encourages its passengers to over-consume beverages, including alcohol, and its crewmembers served DECEDENT at least 33 (thirty-three) alcoholic beverages in the hours leading up to the incident and DECEDENT'S death.

43. As a result of consuming these alcoholic beverages, DECEDENT became intoxicated, and his state of intoxication was and/or should have been readily observable to any reasonable person, including ROYAL CARIBBEAN's crew members.

44. DECEDENT was continuously served alcohol by ROYAL CARIBBEAN's crew members numerous times, well past the point where a person would become visually intoxicated.

45. ROYAL CARIBBEAN is vicariously liable for the acts of its crew members who continued to serve DECEDENT alcoholic beverages past the point where he became visually intoxicated.

46. The crew members that overserved alcohol to DECEDENT, as discussed previously, were agents of ROYAL CARIBBEAN for the following reasons:

    a. All of ROYAL CARIBBEAN's crew members, including the subject crewmembers, were the staff and/or employees of ROYAL CARIBBEAN, or were ROYAL CARIBBEAN'S agents, apparent agents, and/or servants; and/or

    b. These staff, employees, and/or agents were subject to the right of control by ROYAL CARIBBEAN; and/or

    c. These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

    d. ROYAL CARIBBEAN acknowledged that these staff, employees, and/or agents would act on ROYAL CARIBBEAN'S behalf, and they accepted the undertaking.

47. ROYAL CARIBBEAN is vicariously liable for its crew members' over-service of alcohol to DECEDENT.

48. ROYAL CARIBBEAN breached its duty of reasonable care by:

    a. Failing to supervise and monitor the excessive use of alcohol by its passengers

    b. Failing to provide a reasonably safe environment by operating a floating dram shop, permitting and encouraging passengers such as DECEDENT herein to become extremely intoxicated and inebriated by overserving them unreasonable and excessive amounts of alcohol for profit, and/or

    c. Failing to reasonably and properly hire, train, supervise and/or monitor bartenders who serve alcoholic beverages to passengers so that they would not overserve the cruise's passengers, and/or

    d. Failing to implement and maintain proper and reasonably safe policies and/or procedures by which to monitor patrons' alcohol consumption, monitor the condition of inebriated passengers, and care for inebriated passengers, and/or

    e. Failing to hire and/or train employees and/or agents to identify passengers and suspend the service of alcohol to passengers, monitor passengers' consumption of alcohol, monitor the condition of inebriated passengers and care for inebriated passengers, such as making sure they get safely back to their cabins or detaining them in their cabins when they are a danger to themselves or others, and/or

    f. Failing to hire and maintain sufficient deck personnel, wait staff, security officers, bartenders, search and rescue personnel and supervisors for the safety of passengers, and/or

    g. Failing to reasonably maintain and monitor video cameras on the vessel so as to reasonably prevent intoxicated passengers from being injured or killed, and/or

    h. Failing to instruct and/or train its bartenders in not promoting and encouraging excessive purchase of alcohol by its guests, and/or

    i. Negligently and/or knowingly over-serving alcohol to the Decedent causing the Decedent to become overly intoxicated and inebriated.

49. The crew members' breaches were the cause in-fact of DECEDENT's death in that, but for ROYAL CARIBBEAN's crew members' breaches, DECEDENT's incident and death would not have occurred.

50. These crewmembers' breaches proximately caused DECEDENT's death in that the incident that occurred was a foreseeable result of the crewmembers' breach.

51. As a result of these crewmembers' negligence, PLAINTIFF on behalf of the estate of the decedent, is entitled to all damages under the Death on the High Seas Act, including but not limited to loss of support, loss of inheritance, loss of past and future earnings, loss of net accumulations, loss of services and funeral and other related expenses.

**Medical Care and Compression of Decedent's Body**

52. PLAINTIFF incorporates all other paragraphs by reference here fully.

53. ROYAL CARIBBEAN'S crew members and personnel, including its medical and security personnel, were agents, servants, and/or employees of ROYAL CARIBBEAN, and owed a duty to exercise reasonable care under the circumstances for the safety of ROYAL CARIBBEAN's passengers.

54. This duty included, but was not limited to, the responsibility of a marine carrier applicable U.S. maritime common law to supervise and/or assist passengers aboard the vessel who ROYAL CARIBBEAN knew, or should have known, were engaging, or were likely to engage, in behavior potentially dangerous to themselves or others aboard the vessel, and to provide adequate medical care and treatment to passengers under the circumstances.

55. At all times relevant hereto, ROYAL CARIBBEAN crew members and personnel, including its medical and security personnel, were subject to the control and/or right to control by ROYAL CARIBBEAN.

56. At all times relevant hereto, ROYAL CARIBBEAN crew members and personnel, including its medical and security personnel, were acting within the scope of their employment and/or agency.

57. ROYAL CARIBBEAN is vicariously liable for the acts of its crew members who tackled DECEDENT to the ground, stood on DECEDENT'S body with their full weight, and

compressed DECEDENT'S body, causing DECEDENT to stop moving, causing impaired breathing, hypoxia, and ultimately death.

58. ROYAL CARIBBEAN is vicariously liable for the acts of its crew members who directed and/or administered an injection of sedative medication Haloperidol to DECEDENT and used multiple cans of pepper spray on DECEDENT, which fell below the standard of care, and caused and/or contributed to DECEDENT'S death.

59. ROYAL CARIBBEAN is vicariously liable for the acts of its medical personnel who provided treatment and/or care to the DECEDENT which fell below the standard of care andwas improper, inadequate, and/or unreasonable under the circumstances.

60. ROYAL CARIBBEAN is vicariously liable for the HOMICIDE of DECEDENT.

61. The crew members, including but not limited to security and medical personnel who directed and/or participated in the above-referenced conduct which led to DECEDENT'S HOMICIDE were agents of ROYAL CARIBBEAN for the following reasons:

   a. All of ROYAL CARIBBEAN's crew members, including the subject crew members, were the staff and/or employees of ROYAL CARIBBEAN, or were ROYAL CARIBBEAN'S agents, apparent agents, and/or servants; and/or

   b. These staff, employees, and/or agents were subject to the right of control by ROYAL CARIBBEAN; and/or

   c. These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

   d. These staff, employees, and/or agents were under the commands of the ship's officers and followed all of the master's rules and regulations; and/or

    e. ROYAL CARIBBEAN acknowledged that these staff, employees, and/or agents would act on ROYAL CARIBBEAN'S behalf, and they accepted the undertaking; and/or

    f. ROYAL CARIBBEAN's crew members, including the subject crew members, security personnel, and/or medical personnel, wore a ship's uniform provided by ROYAL CARIBBEAN; and/or

    g. ROYAL CARIBBEAN's crew members, including the subject crew members, security personnel, and/or medical personnel, wore badges and name plates containing the word "Royal Caribbean" or containing a Royal Caribbean logo; and/or

    h. ROYAL CARIBBEAN's crew members, including the subject crew members, security personnel, and/or medical personnel, represented themselves as such.

62. ROYAL CARIBBEAN's crew members', including the subject crew members', security personnel, and/or medical personnel's breaches of duties were the cause in-fact of DECEDENT's death in that, but for ROYAL CARIBBEAN's crewmembers' breaches, DECEDENT's incident and death would not have occurred.

63. These crew members' breaches proximately caused DECEDENT's death in that the incident that occurred was a foreseeable result of the crewmembers' breaches.

64. As a result of these crewmembers' negligence, PLAINTIFF on behalf of the estate of the decedent, is entitled to all damages under the Death on the High Seas Act, including but not limited to loss of support, loss of inheritance, loss of past and future earnings, loss of net accumulations, loss of services and funeral and other related expenses.

65. The negligence of ROYAL CARIBBEAN was so far below the standard of care that it constitutes wanton willful or outrageous conduct that entitles PLAINTIFF to punitive damages.

**COUNT II**
**NEGLIGENT HIRING, RETENTION, TRAINING, AND SUPERVISION**
**AGAINST ROYAL CARIBBEAN**

66. PLAINTIFF incorporates all other paragraphs by reference here fully.

67. At all times relevant hereto, ROYAL CARIBBEAN had a duty to select, hire, retain, train, and supervise properly qualified and competent crew members, including but not limited to security and medical personnel, doctors, and/or nurses.

68. At all times relevant hereto, ROYAL CARIBBEAN and/or its agents, servants, joint venturers and/or employees breached its duty to provide DECEDENT with reasonable care under the circumstances by hiring, selecting, retaining, training, and supervising crew members, security personnel, medical personnel, doctors, and/or nurses, which were not properly qualified and incompetent.

69. At all times relevant hereto, ROYAL CARIBBEAN was negligent in the hiring, retention, training and supervision of its crewmembers by its actions, or lack thereof, including but not limited to the following:

   a. Failing to properly screen, investigate, interview, and otherwise hire crewmembers, employees and/or agents;

   b. Failing to properly and reasonably train its crewmembers, employees and/or agents in assessing the state of inebriation of the passengers to whom they serve alcoholic beverages;

    c. Failing to promulgate, implement and enforce rules and regulations intended to deter the excessive sale of alcoholic beverages to cruise passengers; and/or

    d. Failing to promulgate, implement and enforce a compensation system for bartenders that does not depend upon how much alcohol a bartender sells to a particular cruise passenger.

70. At all times relevant hereto, ROYAL CARIBBEAN negligently hired, retained, trained, and/or supervised its medical personnel based on the following:

    a. ROYAL CARIBBEAN medical personnel, including doctors and/or nurses, lacked the proper education, licenses, training, experience and/or skills to work in an environment such as the vessel's medical facility involving emergency and/or critical conditions, like DECEDENT'S condition; and/or

    b. ROYAL CARIBBEAN medical personnel, including doctors and/or nurses, lacked the proper education, licenses, training, experience and/or skills to implement and/or follow an adequate system for triage in order to prioritize treatment according to the severity of the condition(s); and/or

    c. ROYAL CARIBBEAN medical personnel, including doctors and/or nurses, lacked the proper education, licenses, training, experience and/or skills to promptly and/or adequately treat DECEDENT'S emergency and progressive medical condition.

71. At all times material hereto, ROYAL CARIBBEAN knew of the foregoing conditions rendering its medical personnel, including doctors and/or nurses, unqualified and/or incompetent, or the conditions existed for a sufficient length of time so that ROYAL CARIBBEAN, in the exercise of reasonable care under the circumstances, should have learned of them. This knowledge was or should have been acquired through ROYAL CARIBBEAN: (a)

performing a thorough and proper background check on each of its medical personnel, including doctors and/or nurses; (b) investigating the employment history and/or educational background of each of its medical personnel, including doctors and/or nurses; and/or (c) periodically investigating and verifying the credentials and/or qualifications of its medical personnel, including doctors and/or nurses. These background checks and/or investigations did or should have revealed its medical personnel, including doctors' and/or nurses' lack of proper education, licenses, training, experience and/or skills as set forth in the preceding paragraph.

72. At all times relevant hereto, ROYAL CARIBBEAN knew of the foregoing conditions rendering its crew members, including but not limited to security personnel, unqualified and/or incompetent, or the conditions existed for a sufficient length of time so that ROYAL CARIBBEAN, in the exercise of reasonable care under the circumstances, should have learned of them. This knowledge was or should have been acquired through ROYAL CARIBBEAN: (a) performing a thorough and proper background check on each of its crew members, including but not limited to security personnel; (b) investigating the employment history and/or educational background of each of its crew members, including but not limited to security personnel; and/or (c) periodically investigating and verifying the credentials and/or qualifications of its crew members, including but not limited to security personnel. These background checks and/or investigations did or should have revealed its crew members, including but not limited to security personnel's lack of of proper education, licenses, training, experience and/or skills as set forth in the preceding paragraphs.

73. At all times relevant hereto, ROYAL CARIBBEAN was also negligent by:

      a. Failing to supervise its crew members, including but not limited to security and medical personnel, and failing to properly train its crew members, including but not limited to security and medical personnel; and/or

      b. Failing to reasonably and properly hire, train, supervise and/or monitor crewmembers who come into contact with inebriated or under the influence passengers, so that they would take responsibility for the safety and wellbeing of these passengers by escorting them to their cabin, or where warranted, seeking medical help for them; and/or

      c. Failing to reasonably and properly train its crew members in the proper and safe methods of dealing with passengers who may be inebriated or under the influence.

74. As a direct and proximate result of ROYAL CARIBBEAN'S negligence, DECEDENT was killed aboard the *Navigator of the Seas*.

75. As a result of ROYAL CARIBBEAN'S negligence, PLAINTIFF has lost DECEDENT's social security, the value of his services, and incurred expenses for funeral services.

## DAMAGES

76. As a result of the negligence of ROYAL CARIBBEAN, the following damages were incurred:

      a. DECEDENT was injured about his body and extremities, including severe physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom and resulting death.

b.  The Estate of DECEDENT, MICHAEL VIRGIL, incurred funeral and medical expenses. Also, the estate lost the benefit of the net accumulations that MICHAEL VIRGIL would have obtained had he lived to his normal life expectancy.

c.  DECEDENT'S survivors suffered lost support and services, funeral expenses, DECEDENT'S companionship and protection, mental pain and suffering, loss of nurture and guidance, and all other damages as allowable by law.

### DEMAND FOR JURY TRIAL

Plaintiff, CONNIE AGUILAR, as Personal Representative of the ESTATE OF MICHAEL VIRGIL, demands trial by jury on all issues so triable.

**Dated:** 12/5/2025

Respectfully submitted,

/s/ *Anthony J. Russo Jr.*
Anthony J. Russo Jr.
FL Bar No, 0043109
**The Russo Firm**
1001 Yamato Road, Suite 106
Boca Raton FL 33431
Phone: (561) 270-0913
Fax: (954) 767-0656
Anthony@therussofirm.com

-and-

**Of Counsel for Plaintiff:**

Steve Kherkher
TX State Bar No. 11375950
Jesus Garcia, Jr.
TX State Bar No. 24027389
Kevin C. Haynes
State Bar No. 24055639
Hon. Michael Engelhart

19

TX State Bar No.: 00793690
Victoria R. Brown
TX State Bar No.: 24118679
***Pro Hac Vice Applications for Above Attorneys Forthcoming***

**Kherkher Garcia, LLP**
2925 Richmond Ave., Suite 1560
Houston, Texas 77098
Telephone: (713) 333-1030
Fax: (713) 333-1029
Service: SKherkher-Team@KherkherGarcia.com